UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHOSHANA MINZER, <br><br> Plaintiff, <br><br> v. <br><br> DECIBEL THERAPEUTICS, INC., ALISON FINGER, KEVIN MCLAUGHLIN, SARASWATHY NOCHUR, WILLIAM H. CARSON, MATTHEW KAPUSTA, and LAURENCE REID, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Decibel Therapeutics, Inc. ("Decibel" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Decibel will be acquired by Regeneron Pharmaceuticals, Inc. ("Regeneron") through

Regeneron's subsidiary Symphony Acquisition Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2. On August 9, 2023, Decibel and Regeneron issued a joint press release announcing their entry into an Agreement and Plan of Merger (the "Merger Agreement"), to sell Decibel to Regeneron. Under the terms of the Merger Agreement, Regeneron will acquire each outstanding share of Decibel common stock for both of: (i) $4.00 per share in cash, (the "Cash Consideration"), plus (ii) one contractual, non-tradeable contingent value right per share (each, a "CVR"), which entitles the holder to potentially receive contingent payments of up to an aggregate of $3.50 upon the achievement of certain milestones (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on August 25, 2023. The Tender Offer is scheduled to expire one minute after 11:59 p.m. Eastern Time on the date that is twenty (20) business days following August 25, 2023.

3. On August 25, 2023, Decibel filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Decibel stockholders tender their shares in favor of the Tender Offer, omits or misrepresents material information concerning, among other things: (i) Decibel management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview Partners LLC ("Centerview"); and (iii) Centerview's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Decibel's public stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Decibel's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Decibel.

9. Defendant Decibel is a Delaware corporation, with its principal executive offices located at 1325 Boylston Street, Suite 500, Boston, Massachusetts 02215. Decibel is a clinical-

stage biotechnology company. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "DBTX."

10. Defendant Alison Finger ("Finger") has been a director of the Company since December 2021.

11. Defendant Kevin McLaughlin ("McLaughlin") has been a director of the Company since October 2022.

12. Defendant Saraswathy Nochur ("Nochur") has been a director of the Company since December 2021.

13. Defendant William H. Carson ("Carson") has been Chairman of the Board and a director of the Company since May 2021.

14. Defendant Matthew Kapusta ("Kapusta") has been a director of the Company since March 2023.

15. Defendant Laurence Reid ("Reid") has been President, Chief Executive Officer ("CEO"), and a director of the Company since January 2020.

16. Defendants identified in paragraphs 10 to 15 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. Regeneron is a leading biotechnology company that invents life-transforming medicines for people with serious diseases. Founded and led for 35 years by physician-scientists, Regeneron has produced nine FDA-approved treatments and numerous product candidates in development. Regeneron medicines and its pipeline are designed to help patients with eye diseases, allergic and inflammatory diseases, cancer, cardiovascular and metabolic diseases, hematologic conditions, infectious diseases and rare diseases.

18.     Purchaser is a Delaware corporation and wholly owned subsidiary of Regeneron.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

19.     Decibel is a clinical-stage biotechnology company dedicated to discovering and developing transformative treatments to restore and improve hearing and balance, one of the largest areas of unmet need in medicine. Decibel has built a proprietary platform that integrates single-cell genomics and bioinformatic analyses, precision gene therapy technologies and expertise in inner ear biology. The Company is leveraging its platform to advance gene therapies designed to selectively replace genes for the treatment of congenital, monogenic hearing loss and to regenerate inner ear hair cells for the treatment of acquired hearing and balance disorders. Decibel's lead gene therapy product candidate, DB-OTO, is an AAV-based dual-vector gene therapy product candidate designed to be delivered one time to selectively express functional otoferlin ("OTOF") in the inner hair cells of individuals with OTOF deficiency with the goal of enabling the ear to transmit sound to the brain and enable durable, physiological hearing. Decibel has been developing DB-OTO in collaboration with Regeneron Pharmaceuticals.

20.     On August 11, 2023, Decibel announced its second quarter 2023 financial results and business developments. In May 2023, Decibel announced the initiation of CHORD, a global Phase 1/2 dose escalation clinical trial of DB-OTO in pediatric patients. Decibel has opened clinical trial sites in the U.S., the U.K. and Spain and has commenced patient screening activities. DB-OTO received Orphan Drug Designation from the European Medicines Agency (EMA) Committee on Orphan Medicinal Products (COMP) in May 2023, adding to its Orphan Drug and Rare Pediatric Disease Designations from the U.S. Food and Drug Administration (FDA). In July 2023, Decibel received FDA Breakthrough Therapy Designation for DB-020, a novel, proprietary formulation of sodium thiosulfate ("STS"), designed to protect against hearing loss in cancer

patients receiving cisplatin chemotherapy. This was supported by Decibel's Phase 1b clinical trial in which 87% of treated patients experiencing ototoxicity in their placebo-treated ear were partially or completely protected from ototoxicity. Breakthrough Therapy Designation is intended to expedite the development and review of medicines intended to treat serious or life-threatening conditions that have preliminary clinical evidence indicating that the drug may demonstrate substantial improvement over available treatments. A Breakthrough Therapy Designation conveys all the fast-track program features, more intensive FDA guidance on the drug development program, an organizational commitment involving senior FDA managers and eligibility for rolling review and priority review. Reflecting on the Company's progress, defendant Reid stated:

> This week we announced a definitive agreement with Regeneron Pharmaceuticals to acquire Decibel, which we believe reflects the tremendous promise of gene therapy for hearing loss. We remain highly focused on executing on the CHORD clinical trial and excited by the potential benefit that DB-OTO may provide to people with otoferlin-related hearing loss. With six active clinical trial sites at prestigious institutions across three countries, we continue to work towards our goal of addressing this unmet medical need.

**The Proposed Transaction**

21. On August 9, 2023, Decibel and Regeneron issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> TARRYTOWN, N.Y. and BOSTON, Aug. 09, 2023 (GLOBE NEWSWIRE) -- Regeneron Pharmaceuticals, Inc. (NASDAQ: REGN) and Decibel Therapeutics, Inc. (NASDAQ: DBTX), a clinical-stage biotechnology company dedicated to discovering and developing transformative treatments to restore and improve hearing and balance, today announced a definitive agreement for the acquisition of Decibel by Regeneron at a price of $4.00 per share of Decibel common stock payable in cash at closing, with an additional non-tradeable contingent value right (CVR) to receive up to $3.50 per share in cash upon achievement of certain clinical development and regulatory milestones for Decibel's lead investigational candidate, DB-OTO, within specified time periods. The proposed acquisition values Decibel at a total equity value of approximately $109 million based on the amount payable at closing, and a total equity value of up to approximately $213 million if the CVR milestones are achieved.

"We at Decibel are deeply committed to discovering and advancing innovative new therapies with the potential to be transformative for people with severe forms of hearing loss.  We have built a pipeline of gene therapy product candidates for the ear that we believe have such potential.  After full consideration, the Decibel Board has determined that this transaction is the best way to maximize shareholder value and ultimately benefit patients," said Laurence E. Reid, Ph.D., President and Chief Executive Officer of Decibel.  "We have collaborated with our colleagues at Regeneron for the past six years and have huge respect for their research and development capabilities.  We have full confidence that with Regeneron's expertise and resources the Decibel pipeline can be optimally developed, and our team is committed to enabling that long-term success."

Decibel and Regeneron established their initial collaboration in 2017, with an extension announced in 2021, and are developing three gene therapy programs targeting different forms of congenital, monogenic hearing loss.  DB-OTO, which is currently in the global Phase 1/2 CHORDTM clinical trial, is an investigational cell-selective, adeno-associated virus (AAV) gene therapy designed to provide durable, physiological hearing to individuals with profound, congenital hearing loss caused by mutations of the otoferlin gene.  Preclinical programs include AAV.103 for people with GJB2-related hearing loss and AAV.104 for people with stereocilin (STRC)-related hearing loss.

"We are delighted to announce the planned acquisition of Decibel, who have been long-standing collaborators, notable for their deep scientific knowledge and commitment to people with hearing loss," said George D. Yancopoulos, M.D., Ph.D., Board co-Chair, Chief Scientific Officer and President of Regeneron.  "DB-OTO, our shared lead investigational gene therapy, will soon reach patients in its first clinical trial, offering new promise to children with this rare form of congenital hearing loss, as well as potential proof-of-concept for future gene therapies addressing more common forms of genetic hearing loss.  We believe that Decibel's assets and specialized team will further strengthen our genetic medicines portfolio, enabling Regeneron to accelerate the development of innovative genetic therapies and a rich pipeline of hearing loss treatments."

Congenital hearing loss is a significant unmet medical need with no approved medical therapies that affects approximately 1.7 out of every 1,000 children born in the United States.  While hearing loss caused by mutations of the otoferlin gene is rare, the majority of permanent, congenital hearing loss cases diagnosed in developed countries are sensorineural and result from a single gene defect, making them appealing targets for gene therapy.  Hearing aids and cochlear implants may offer benefits, but they fall short of replicating normal hearing function.

The merger agreement provides for Regeneron, through its wholly owned subsidiary Symphony Acquisition Sub, Inc., to initiate a tender offer to acquire all outstanding shares of Decibel at a price of $4.00 per share of Decibel common stock payable in cash at closing plus one CVR payable in cash subject to the terms and

conditions contained in a contingent value rights agreement ("CVR Agreement"). CVR holders would become entitled to receive contingent payments as follows: (i) $2.00 in cash, upon the fifth participant being administered with DB-OTO in a clinical trial on or prior to December 31, 2024 (the DB-OTO Milestone); and (ii) $1.50 in cash, upon (a) the first participant being administered with DB-OTO in a registration enabling trial (as defined in the CVR Agreement) or (b) acceptance for review of a Biologics License Application by the U.S. Food and Drug Administration, a Marketing Authorization Application by the European Medicines Agency or the U.K. Medicines and Healthcare Products Regulatory Agency, or an equivalent application by the applicable national regulatory authority in any of Germany, France, Italy or Spain for DB-OTO, whichever occurs first, on or prior to December 31, 2028; provided the DB-OTO Milestone is achieved on or prior to December 31, 2024. There can be no assurance that any payments will be made with respect to the CVR. The closing of the tender offer will be subject to certain conditions, including the tender of at least a majority of the outstanding shares of Decibel common stock and other customary closing conditions. Upon the successful completion of the tender offer, Regeneron will acquire all shares not acquired in the tender through a second-step merger for the same consideration per share paid in the tender offer. The transaction is expected to close in the third quarter of 2023.

Regeneron's legal advisor for the transaction is Wachtell, Lipton, Rosen & Katz. Centerview Partners LLC and Leerink Partners LLC are serving as Decibel's financial advisors and Wilmer Cutler Pickering Hale and Dorr LLP is serving as Decibel's legal advisor.

**Insiders' Interests in the Proposed Transaction**

22. Decibel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Decibel.

23. Notably, Decibel insiders stand to reap substantial financial benefits for securing the deal with Regeneron. The following table sets forth the cash payments that Company insiders will receive upon tendering their ordinary shares pursuant to the Proposed Transaction:

| Name of Executive Officer or Director | Shares Owned (#) | Total Cash Consideration for Shares ($) | Maximum CVR Amount Payable for Shares ($) |
|---|---|---|---|
| **Executive Officers** | | | |
| Laurence Reid, Ph.D. | 25,849 | $ 103,396 | $ 90,472 |
| John Lee | 27,144 | $ 108,576 | $ 95,004 |
| Anna Trask | 1,864 | $ 7,456 | $ 6,524 |

24.    Moreover, under the terms of the Merger Agreement, all Company options and restricted stock units ("RSUs") will be converted into the right to receive cash payments upon consummation of the Proposed Transaction. The following tables set forth the value of cash payments that Decibel's directors and executive officers stand to receive in connection with the consummation of the merger pursuant to their Company equity awards:

| | Specified Options ||||||||| 
|---|---|---|---|---|---|---|---|---|---|
| Name of Executive Officer or Director | Number of Shares Underlying Tranche 1 Options (#) | Cash Consideration for Tranche 1 Options at Closing ($) | Maximum CVR Amount Payable in Respect of Tranche 1 Options ($) | Number of Shares Underlying Tranche 2 Options (#) | Cash Consideration for Tranche 2 Options at Closing ($) | Maximum CVR Amount Payable in Respect of Tranche 2 Options ($) | Number of Shares Underlying Tranche 3 Options (#) | Cash Consideration for Tranche 3 Options at Closing ($) | Maximum CVR Amount Payable in Respect of Tranche 3 Options ($) |
| **Executive Officers** | | | | | | | | | |
| Laurence Reid, Ph.D. | 259,500 | $ 113,190 | $908,250 | 1,072,539 | $ — | $3,325,943 | — | $ — | $ — |
| John Lee | 97,500 | $ 65,850 | $341,250 | 232,003 | $ — | $ 719,441 | — | $ — | $ — |
| Anna Trask | 97,500 | $ 65,850 | $341,250 | 137,302 | $ — | $ 425,774 | — | $ — | $ — |
| James Murphy | — | $ — | $ — | — | $ — | $ — | — | $ — | $ — |
| **Directors** | | | | | | | | | |
| William H. Carson, M.D. | 10,000 | $ 17,000 | $ 35,000 | 5,000 | $ — | $ 13,600 | — | $ — | $ — |
| Alison Finger, M.B.A. | 10,000 | $ 17,000 | $ 35,000 | 5,000 | $ — | $ 13,600 | 20,000 | $ — | $ 26,000 |
| Matthew Kapusta, M.B.A. | 10,000 | $ 6,600 | $ 35,000 | — | $ — | $ — | — | $ — | $ — |
| Kevin McLaughlin, M.B.A. | 20,000 | $ 22,400 | $ 70,000 | 5,000 | $ — | $ 13,600 | — | $ — | $ — |
| Saraswathy Nochur, Ph.D. | 10,000 | $ 17,000 | $ 35,000 | 5,000 | $ — | $ 13,600 | 20,000 | $ — | $ 26,000 |

| Name of Executive Officer or Director | Number of Unvested Company RSUs (#) | Total Cash Consideration for Company RSUs ($) | Maximum CVR Amount Payable for Company RSUs ($) |
|---|---|---|---|
| **Executive Officers** | | | |
| Laurence Reid, Ph.D. | 236,667 | $ 946,668 | $ 828,335 |
| John Lee | 169,000 | $ 676,000 | $ 591,500 |
| Anna Trask | 116,667 | $ 466,668 | $ 408,335 |
| James Murphy | — | $ — | $ — |
| **Directors** | | | |
| William H. Carson, M.D. | 5,000 | $ 20,000 | $ 17,500 |
| Alison Finger, M.B.A. | 5,000 | $ 20,000 | $ 17,500 |
| Matthew Kapusta, M.B.A. | 10,000 | $ 40,000 | $ 35,000 |
| Kevin McLaughlin, M.B.A. | 5,000 | $ 20,000 | $ 17,500 |
| Saraswathy Nochur, Ph.D. | 5,000 | $ 20,000 | $ 17,500 |

25.    Moreover, if they are terminated in connection with the merger, Decibel's named executive officers will receive substantial severance payments, as set forth in the following table:

| Name | Cash Severance ($) | Health Benefits ($) | Total ($) |
|---|---|---|---|
| Laurence Reid, Ph.D. | $1,571,731 | $ 40,050 | $1,611,781 |
| John Lee | $ 796,415 | $ 35,256 | $ 831,671 |
| Anna Trask | $ 635,100 | $ 37,932 | $ 673,032 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

28.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Decibel's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Decibel management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Centerview's potential conflicts of interest.

*Material Omissions Concerning Decibel Management's Financial Projections*

30.     The Recommendation Statement omits material information regarding Company management's financial projections.

31.     For example, the Recommendation Statement provides a summary of the Company's risk-adjusted projections, but fails to disclose a summary of Company management's non-risk-adjusted projections.  The Recommendation Statement similarly fails to disclose a quantification of the assumptions underlying the risk-adjusted projections where applicable, including, but not limited to:

> (i)     risk-based adjustments reflecting the probability and timing of regulatory approval and commercial launch for each of Decibel's product candidates, (ii) market size, market share, competition, pricing and reimbursement for each of Decibel's product candidates; (iii) research and development expenses, sales and

marketing, general and administrative expenses, costs of goods sold and other operating expenses; (iv) outbound royalties and milestone payments; (v) financing requirements; (vi) effective tax rate and utilization of net operating losses, and (vii) other relevant factors relating to Decibel's strategic plan, as well as how certain of these assumptions and estimates may change over time.

Recommendation Statement at 38.

32. Additionally, with respect to the Company's risk-adjusted projections, the Recommendation Statement fails to disclose: (i) the tax savings from usage of Decibel's estimated federal net operating losses and the Company's estimated future losses; (ii) the net impact of assumed equity raises in 2023, 2024 and 2026; and (iii) all line items underlying (a) Total Gross profit; (b) EBIT; and (c) Unlevered Free Cash Flow.

33. The omission of this information renders the statements in the "Certain Company Management Forecasts" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Centerview's Financial Analyses*

34. The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Decibel's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

35. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 16.5% to 18.5%; (ii) quantification of the tax savings from

11

usage of Decibel's estimated federal net operating losses and the Company's estimated future losses; (iii) Decibel's cash balance as of June 30, 2023; (iv) quantification of the net impact of assumed equity raises in 2023, 2024 and 2026; and (v) Decibel's fully diluted outstanding shares used in the analysis.

36. With respect to Centerview's *Analyst price Target Analysis*, the Recommendation Statement fails to disclose the individual price targets set for the Company and the sources thereof.

37. With respect to Centerview's *Precedent Premiums Paid Analysis*, the Recommendation Statement fails to disclose the transactions observed and the individual premiums observed for each transaction.

38. The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Potential Conflicts of Interest***

39. The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Centerview.

40. For example, the Recommendation Statement fails to disclose the fees received by Centerview for providing financial advisory services to LogicBio Therapeutics, Inc. ("LogicBio"), a publicly traded company in which affiliates of OrbiMed Advisors LLC ("OrbiMed") (which holds an approximately 19.8% equity interest in the Company) held a significant minority equity interest, in connection with its sale to Alexion Pharmaceuticals, Inc., and for providing financial advisory services to ReViral Inc. ("ReViral"), a private company in which affiliates of OrbiMed held a significant minority equity interest, in connection with its sale to Pfizer Inc.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Decibel stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

26. Plaintiff repeats all previous allegations as if set forth in full.

27. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Decibel stockholders to tender their shares in the Tender Offer.

28. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

29. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

30. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

31. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Decibel, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

32. Plaintiff repeats all previous allegations as if set forth in full.

33. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary to make the statements made, considering the circumstances under

which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

34. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

35. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether to tender her shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

36. Plaintiff repeats all previous allegations as if set forth in full.

37. The Individual Defendants acted as controlling persons of Decibel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Decibel and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

40. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

41. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Decibel, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 28, 2023

**WEISS LAW**
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010

*Attorneys for Plaintiff*